IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Kwame Agyenim Boateng, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11cv668 (AJT/JFA) |
| | ) | |
| Harold W. Clarke, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Kwame Agyenim Boateng, a Virginia inmate proceeding pro se, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction in the Circuit Court of Prince William County, Virginia. On September 16, 2011, respondent filed a Motion to Dismiss and Rule 5 Answer, along with a supporting brief. Boateng was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), and he submitted a response opposing respondent's motion on October 12, 2011. For the reasons which follow, respondent's Motion to Dismiss will be denied without prejudice.

I.

Following a bench trial, petitioner was convicted of aggravated sexual battery and indecent liberties on April 16, 2008. Case No. CR05068408, CR05068409. On that same date, petitioner was sentenced to serve ten years in prison with six years and seven months suspended for the sexual battery, plus ten years with seven years suspended for the indecent liberties, for a total active sentence of six years and five months incarceration. Resp. Ex. 1.

1

On May 6, 2008, petitioner's appointed counsel, Timothy A. Ward, Esquire, noticed an appeal of Boateng's conviction at the Court of Appeals of Virginia. When counsel failed timely to file a petition for appeal, the Court dismissed the appeal on October 6, 2008. Boateng v. Commonwealth, R. No. 1137-08-4 (Va. Ct. App. Oct. 6, 2008).

On March 9, 2011, Boateng filed a pro se petition for a state writ of habeas corpus in the Supreme Court of Virginia, in which he raised the following claims:

1. The evidence was insufficient to sustain his conviction.

2. He received ineffective assistance of counsel because counsel failed to perfect his direct appeal.

3. Counsel "perpetrated collateral extrinsic fraud" on him by "usurping [his] appeal and disrupting the only available direct review of [his] conviction."

4. Counsel "denied [him] the right to challenge [counsel's] ineffectiveness at [his] trial."

5. Counsel denied him his rights as a Ghanian national under the treaties of the United States.

Resp. Ex. 2. By Order entered May 9, 2011, the Supreme Court of Virginia dismissed Boateng's habeas application as untimely filed pursuant to Va. Code § 8.01-654(A)(2), which establishes the limitations period for habeas corpus challenges in Virginia. Boateng v. Dir., Dep't of Corr., R. No. 110469 (Va. May 9, 2011); Resp. Ex. 3. Boateng then turned to the federal forum and filed this § 2254 application on June 2, 2011,[1] reiterating the same claims he presented to the

---

[1] For purposes of calculating the statute of limitations, a petition is deemed filed when it is delivered to prison officials for mailing. Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); see also Houston v. Lack, 487 U.S. 266 (1988). In this case, Boateng executed his petition on June 2, 2011, Pet. at 14, and in the absence of evidence to the contrary the Court assumes

2

Supreme Court of Virginia in his state habeas corpus proceeding.

## II. Timeliness

Pursuant to 28 U.S.C. § 2244(d), a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). In this case, Boateng was convicted and sentenced on April 16, 2008, and his direct appeal was dismissed by the Court of Appeals on October 6, 2008. Because petitioner did not seek further direct review by the Supreme Court of Virginia, his conviction became final thirty (30) days after the Court of Appeals issued its opinion, when the time for noticing an appeal to the Supreme Court of Virginia expired. See Va. Sup. Ct. R. 5A:6(a). Thus, § 2254(d)'s one-year limitations period began to run on January 4, 2009.

In calculating the limitations period, the Court generally must exclude any time during which properly-filed state collateral proceedings pursued by petitioner were pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Here, however, Boateng did not commence his first postconviction proceeding until March 11, 2011, when he filed his application for a writ of habeas corpus in the Supreme Court of Virginia. Since by then over twenty-six (26) months had elapsed since the conviction became final, the federal statute of limitations had expired, so the pendency of the state habeas proceeding could not toll the limitations period. See Ferguson

---

it was placed in the prison mail system that same day.

v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (holding that a state postconviction motion filed after expiration of the limitations period cannot toll the period, because there is no period remaining to be tolled); Rashid v. Khulmann, 991 F.Supp. 254, 259 (S.D.N.Y. 1998) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."). Accordingly, this petition is untimely under § 2244(d), unless petitioner can establish that the statute of limitations does not apply or should otherwise be tolled.

Not surprisingly, petitioner argues that the limitations period should be equitably tolled in his case on the basis of counsel Ward's failure to perfect petitioner's direct appeal. The United States Supreme Court has established that equitable tolling is applicable to the § 2244(d)(2) limitations period. See Holland v. Florida, 560 U.S. ___, 130 S.Ct. 2549 (2010) ("Now, like all 11 Courts of Appeals that have considered the question, we hold that § 2244 (d) is subject to equitable tolling in appropriate cases."). It has been settled in this circuit for some time that § 2244(d) may be subject to equitable doctrines such as tolling under very limited circumstances. See Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003); Harris v. Hutchinson, 209 F.3d 325, 328-29 (4th Cir. 2000). Specifically, equitable tolling is "reserved for those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris, 209 F.3d at 330. Importantly, however, invocations of equity

> ... to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individual hardship supplant the rules of clearly drafted statutes.

4

Rouse, 339 F.3d at 246. For equitable tolling to apply, therefore, a petitioner must establish that (1) extraordinary circumstances, (2) beyond his control and external to his own conduct (3) prevented him from filing on time. Id. On the other hand, it is well settled that a petitioner's lack of diligence in pursuing his federal remedy negates the application of equitable tolling. See Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). Thus, a petitioner seeking equitable tolling bears the burden of establishing that he or she has been pursuing his or her rights diligently. Pace, 544 U.S. at 418.

In this case, in response to the Court's initial order directing petitioner to address the issue of the timeliness of his petition, petitioner submitted an affidavit detailing the following chronology. Petitioner, who is a Ghanian national, requested that his counsel, Mr. Ward, file an appeal of petitioner's conviction. In April, 2008, while still confined at a local jail, petitioner received a copy of the notice of appeal Ward filed on his behalf. Ward advised petitioner that he would perfect the appeal and would keep petitioner informed of its progress. Pet. Aff. ¶¶ 3 - 4. Thereafter, petitioner was transferred to the custody of the Virginia Department of Corrections ("VDOC") and was housed at Dillwyn Correctional Center. Petitioner promptly advised Ward of his change of address and requested copies of all papers filed in his appeal, but he received no response. Id., ¶¶ 5 - 6.

In the months that followed petitioner wrote "several" letters to Ward inquiring about the status of the appeal, but Ward did not respond. Petitioner also attempted to contact Ward by telephone, but Ward's office refused to accept the collect calls. When these efforts to contact Ward directly proved unsuccessful, petitioner sent his sister to Ward's office sometime in 2009 to inquire about the appeal. However, Ward requested a consultation fee that the sister could not afford, so Ward refused to speak to her. Id., ¶¶ 7 - 8.

5

At that juncture, petitioner approached another prisoner for assistance. That prisoner wrote to Ward on petitioner's behalf to request information about the appeal and copies of petitioner's trial transcript. As before, no response was forthcoming. In addition, the prisoner assisted petitioner in writing to the Clerk of the trial court in May, 2010 to request copies of documents from petitioner's court file, but the clerk did not respond. Id., ¶ 15. The prisoner thereupon helped petitioner file an application for a writ of mandamus for production of documents in the trial court. The petition was denied by Order dated September 30, 2010. Id., ¶¶ 9 - 10.

In October, 2010, petitioner was transferred to Lunenburg Correctional Center, where he met a fellow African prisoner named Oludare Ogunde. Ogunde offered to help petitioner contact Ward and the courts, and through these efforts petitioner learned that his appeal had been dismissed in October, 2008 due to Ward's failure to file a petition for appeal. Id., ¶ 11. Ogunde assisted petitioner in drafting a letter to Ward on December 10, 2010, seeking petitioner's case file. As before, this letter went unanswered. Id., ¶ 12. At that point the only court paper petitioner had in his possession was the notice of appeal Ward provided to him in April, 2008, so he was unable to supply any of the information needed to file a petition for a state writ f habeas corpus. All of his trial transcripts, court papers, and orders were in Ward's possession. Id., ¶ 13. Accordingly, Ogunde again assisted petitioner in preparing a second letter to the Clerk of the trial court, requesting copies of the documents contained in petitioner's court file. By letter dated December 6, 2010, the Clerk granted petitioner's request, and provided him with copies of the arrest warrant, indictment, sentencing order, and discovery materials. Id., ¶ 14.

Also in December, 2010, petitioner filed a complaint against Ward with the Virginia Bar. On December 14, 2010, the Bar directed Ward to submit written objections within twenty-one

(21) days, but Ward failed to do so, and by the time petitioner drafted his affidavit in July, 2011, Ward still had filed no response to the Bar complaint.

In March, 2011, petitioner filed a petition for a writ of habeas corpus with the Supreme Court of Virginia with Ogunde's assistance. By Order dated May 9, 2011, the petition was dismissed as untimely, and petitioner then filed his § 2254 application in this Court on June 21, 2011.

Petitioner has also supplied the affidavit of Oludare Ogunde, who states that he met petitioner at Coffeewood Correctional Center in October, 2010. Petitioner was addressed to affiant as a fellow African, and they became acquainted. Ogunde Aff., ¶ 2. Shortly after the two met, petitioner requested Ogunde's assistance in locating the lawyer in Prince William County Circuit Court who had been appointed to represent him on the direct appeal of his conviction, because petitioner was "very worried and uninformed about the status of his appeal." Id., ¶ 3. Ogunde agreed, and wrote a letter to Ward on petitioner's behalf. When the lawyer failed to respond, Ogunde "availed [him]self of [his] contacts outside the prison," and discovered sometime in October, 2011 that petitioner's appeal had been dismissed in 2008. Id., ¶ 4. Ogunde advised petitioner of this information and offered to assist him in filing a petition for habeas corpus relief, but this could not be done because petitioner had no transcripts or documents relating to his conviction in his possession. Ogunde therefore wrote to the clerk of the trial court to obtain the documents from petitioner's court file. Id., ¶ 5. When the documents arrived, Ogunde helped petitioner prepare both a petition for a writ of habeas corpus, which petitioner filed in the Supreme Court of Virginia, and a complaint against petitioner's counsel, which was filed with the Virginia Bar and to which the lawyer did not respond. Id., ¶¶ 6 - 7. When petitioner's state habeas application was denied, Ogunde helped petitioner file the instant federal

petition. Id., ¶ 8. Ogunde states that petitioner "has no knowledge or ability whatsoever that would enable him to accomplish any of these tasks," and that without Ogunde's help none of the foregoing proceedings could have been filed. Id., ¶ 9.

Respondent argues in his Brief in Support of Rule 5 Answer and Motion to Dismiss that Boateng is not entitled to equitable tolling because he failed to act with reasonable diligence to protect his rights. Id. at 8. Without addressing any of the specifics set out in either of the affidavits petitioner has supplied, respondent points out that the information that petitioner's direct appeal was dismissed became publicly available in October, 2008, and argues that had petitioner exercised reasonable diligence in discovering that fact, there would have remained thirteen months in which he could have filed a timely § 2254 application. Id. Respondent contends that because reasonably diligent inquiry into public sources would have revealed to petitioner that his attorney had failed to perfect his appeal, petitioner "slumbered upon his rights" and is not entitled to equitable tolling of the limitations period. Id. at 9.

In Holland, the Supreme Court rejected the respondent's argument that the petitioner was not entitled to equitable tolling on the basis of lack of diligence, noting that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" 130 S.Ct. at 2565, citations omitted. In that case, petitioner wrote his attorney numerous letters of inquiry and repeatedly contacted state court clerks and the Florida Bar Association, seeking crucial information in an effort to have his court-appointed attorney removed from his case. Id. Holland sought such action after his counsel failed to file a timely federal petition, despite many letters from Holland emphasizing the importance of doing so; did not do the research necessary to ascertain the proper filing date, even though Holland had identified the applicable legal rules for him; failed to inform Holland that his case had been

decided, despite Holland's many request for that information; and failed to communicate with Holland over a period of years, despite Holland's pleas for responses to his letters. Id. at 2564. The Court found that under such circumstances, the district court erred in finding that petitioner's lack of diligence barred equitable tolling, and the Eleventh Circuit erroneously relied on an "overly rigid *per se* approach" in finding that "[p]ure professional negligence" by a petitioner's attorney can never constitute an extraordinary circumstance sufficient to warrant equitable tolling. Id. at 2565. However, the Court stopped short of stating its conclusion in "absolute form," choosing instead to remand the matter for additional proceedings to determine whether the facts entitled Holland to equitable tolling. Id.

In a concurring opinion, Justice Alito expanded upon the Court's holding by "not[ing] that several broad principles may be distilled from the Court's precedents" on equitable tolling. Id. at 2566. In his view, the Court's prior cases make it "abundantly clear" that attorney negligence, even gross attorney negligence, is an insufficiently extraordinary circumstance to warrant equitable tolling of the limitations period. Id. at 2566, citing Lawrence v. Florida, 549 U.S. 327 (2007); Coleman v. Thompson, 501 U.S. 722 (1991). On the other hand, "the AEDPA statute of limitations may be tolled if the missed deadline results from attorney misconduct that is not constructively attributable to the petitioner." Id. at 2568. Noting that counsel's near-total failure to communicate with Holland essentially amounted to Holland's "abandonment" by counsel, Justice Alito concluded that "[i]f true, petitioner's allegations would suffice to establish extraordinary circumstances beyond his control. Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." Id. at 2568; quoted with approval in Maples v. Thomas, \_\_\_ U.S. \_\_\_ , 132 S.Ct. 912, 923 (2012).

9

In this case, given the facts attested by petitioner and the developing state of the foregoing applicable law, the Court declines to decide whether petitioner is entitled to equitable tolling in the absence of further briefing by respondent.

### III. Procedural Bar

Respondent also argues that even if equitable tolling were deemed to apply in this case, petitioner's claims are procedurally defaulted from federal consideration. A state court's finding of procedural default is entitled to a presumption of correctness, Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988) (citing 28 U.S.C. § 2254(d)), provided two foundational requirements are met, Harris v. Reed, 489 U.S. 255, 262-63 (1989). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. Id. Second, the state procedural rule furnished to default petitioner's claim must be an independent and adequate state ground for denying relief. Id. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). When these two requirements have been met, federal courts may not review the barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260.

In this case, when petitioner raised the same claims he makes here in his state habeas corpus application, the Supreme Court of Virginia dismissed the claims as untimely filed pursuant to Virginia Code § 8.01-654(A)(2). Where a state court has made an express determination of procedural default, the finding is entitled to a presumption of correctness on federal habeas corpus review, provided two foundational requirements are met. See 28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. See Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259 (1989). Second, the state

10

procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief. See Harris, 489 U.S. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). The Supreme Court of Virginia's finding in this case that Boateng's state habeas application was filed untimely constitutes an independent and adequate state ground for denying relief. See O'Dell v. Netherland, 95 F.3d 1214, 1243 (4th Cir. 1996); see also Hedrick v. True, 443 F.3d 342, 360 (4th Cir. 2006).

When these two requirements are met, federal courts may not review the barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton, 845 F.2d at 1241-42.

In Maples, the Supreme Court found based on "extraordinary facts" that a death-sentenced petitioner had established cause for the procedural default of his claims when he demonstrated that he was "[a]bandoned by counsel [and] left unrepresented at a critical time for his state postconviction petition, and he lacked a clue of any need to protect himself *pro se*." 132 S.Ct. at 917. The Court acknowledged that in Holland, it had dealt with the question of whether attorney abandonment could warrant equitable toling of the AEDPA limitations period, while in the case before it the issue was whether the same circumstance could provide cause sufficient to overcome a procedural default. Nonetheless, it concluded, "We see no reason, however, why the distinction between attorney negligence and attorney abandonment should not hold in both contexts." Maples, 132 S.Ct. at 923, n. 7.

11

Here, then, for the same reasons discussed *ante* in connection with the issue of timeliness, the Court will refrain from deciding whether the claims of this petition are procedurally barred at this juncture, and will require additional briefing.

## IV. Conclusion

For the foregoing reasons, the Motion to Dismiss will be denied without prejudice, and respondent will be allowed thirty days within which to file a supplemental response to petitioner's claims. Should respondent wish to renew his arguments that the petition is time-barred and the claims are procedurally defaulted, he shall re-address those issues in light of the facts and law discussed herein. The supplemental response shall also include any additional procedural or merits-based replies to petitioner's claims. An appropriate Order shall issue.

Entered this 5th day of April 2012.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge